[Civ. No. 33033. First Dist., Div. Three. Feb. 3, 1975.]

EDWARD DOSIER, Plaintiff and Appellant, v.
WILCOX-CRITTENDON COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Cotchett & Hutchinson, Cotchett Hutchinson & Dyer, Joseph W. Cotchett, Gloria L. Gruber, Susan Illston and Michael P. Quinlivan for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Arne Werchick, Stephen I. Zetterberg, Robert G. Beloud, Ned Good, David B. Baum, Elmer Low and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

O'Connor, Cohn & Dillon and Cyril Viadro for Defendants and Respondents.

**OPINION**

ARATA, J.*—Plaintiff-appellant Edward Dosier takes this appeal from a

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

judgment for defendants Wilcox-Crittendon Company and North and Judd Manufacturing Company in a personal injury action based on strict liability. Plaintiff's complaint against these defendants as manufacturers of an alleged "hook" is framed in two causes of action; the first is based upon a claimed defect and the second is based upon a failure to warn. The evidence reveals that North and Judd are engaged principally in the manufacture of harness and saddlery hardware, belt buckles, shoe buckles, dog leads, handbag hardware, hooks and eyes for men's trousers and a line of plastics used for electrical fittings. Wilcox-Crittendon is a wholly owned subsidiary of North and Judd. The "hook" involved in this case was manufactured by North and Judd, and bears the company's trademark. It is described in its catalog as a No. 333 snap. The snap, hereinafter referred to as "hook" is made of cast malleable iron having the following dimensions: overall length of four and three-quarters inches, a seven-eighths of an inch swivel eye with a ring size opening of one-half inch; it has a tongue that opens outward. It is manufactured principally to be used as a bull tie, stallion chain or cattle tie; it is distributed or marketed through wholesale hardware houses, and houses that sell harness and saddlery wares. The particular "hook" at issue in this case was purchased by a buyer for United Air Lines for its plant maintenance shop at San Francisco Airport for use in connection with a "safety rope around a workstand." It was bought from Keystone Brothers, a harness and saddlery wares outlet in San Francisco in 1964. At the time of the purchase the "hook" was selected by the buyer from a display board featuring harness equipment such as bridles, spurs and bits; there was no discussion as to intended use when the purchase was made. The buyer was familiar with this type of "hook" as a result of his earlier experience on a farm.

On March 28, 1968, the plaintiff, as an employee of United Air Lines, was working with a crew installing a grinding machine at its maintenance plant. As part of the rigging process, he attached the "hook" to a 1,700-pound counterweight and lifted it to a point where it was suspended in the air. At this point plaintiff reached under the suspended counterweight in search of a missing bolt when suddenly the "hook" gave way and the counterweight fell on his arm causing the injuries for which he seeks damages. The "hook" was supplied to plaintiff by a plant foreman as part of a sling; there was no marking on the "hook" as to its content or lifting capacity.

Plaintiff-appellant states the issues on appeal as follows: "1. Whether the hook was defective because defendants failed to provide warnings of

its proper use and capacity; and 2. Whether plaintiff's use of the hook for lifting was reasonably foreseeable by the manufacturer." An analysis of these two issues as stated reveals that there is one common element in both; i.e., *whether the "hook" was being used in a way intended by the manufacturer.* ■ In order to invoke the doctrine of strict liability, the plaintiff must prove that the product was being used, at the time of injury, in a way the manufacturer intended it to be used. (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153]; Cotchett and Cartwright, Cal. Products Liability Actions (1970) § 8.04[4] p. 365.) In applying this rule our courts have held that it should not be narrowly applied and that even an "unusual use" which the manufacturer *is required to anticipate* should not relieve the manufacturer of liability in the absence of warnings against such use. (*Johnson* v. *Standard Brands Paint Co.* (1969) 274 Cal.App.2d 331 [79 Cal.Rptr. 194], citing Prosser, *Strict Liability to the Consumer* (1966) 18 Hastings L.J. 9, 36-38.) Just what a manufacturer is "required to anticipate" in connection with the use of a product is a question of reasonable foreseeability; see *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 586 [75 Cal.Rptr. 652, 451 P.2d 84]; *Thomas* v. *General Motors Corp.* (1970) 13 Cal.App.3d 81, 91 [91 Cal.Rptr. 301]; Cotchett and Cartwright, California Products Liability Actions (1970) section 8.04[4], page 365. It has been repeatedly held that the foreseeability of the misuse of a product is a question for the trier of fact. (*Thompson* v. *Package Machinery Co.* (1971) 22 Cal.App.3d 188, 196 [99 Cal.Rptr. 281]; *Johnson* v. *Standard Brands Paint Co., supra.*)

■ One of plaintiff-appellant's main complaints on appeal is that the trial judge committed prejudicial error by receiving evidence concerning the circumstances surrounding the purchase of the "hook" and its use by United. We cannot agree. In deciding whether or not a product is being used in a way the manufacturer intended it to be used, the market for which it is produced is a most important consideration. This bears directly upon the issue of foreseeability. In commenting on this point in *Helene Curtis Industries, Inc.* v. *Pruitt* (5th Cir. 1967) 385 F.2d 841, 860, the court said: "The intended marketing scheme is one basis for deciding which users can be foreseen." The importance and relevancy of the "marketing scheme" is recognized in *Johnson* v. *Standard Brands Paint Co., supra,* 274 Cal.App.2d 331 at page 338, where the court said: ". . . there was substantial evidence to support the jury's implied finding that the decedent was *within the ambit of those entitled to protection from the*

*risk created by the distribution and sale of the defective ladder . . . ."* (Italics added.)

The logic of the conclusion that the marketing scheme of the manufacturer is relevant in cases involving strict liability was demonstrated at the time of the enunciation of the rule in *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57 at page 63: "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." And, again, in *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168]: "Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." From the foregoing it should be evident that in order to distribute the cost, the manufacturer must be able to identify and anticipate the particular market. Therefore evidence of the method of distribution of the product is relevant.

We agree with plaintiff-appellant that evidence pertaining to negligence of United Air Lines, including its safety practices, was not relevant, but do not agree that it was prejudicial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 835-837 [299 P.2d 243]; *People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].) Some of this evidence came into the case in connection with defendants' attempts to trace the avenues through which the "hook" became a component of the equipment supplied to plaintiff-appellant; as we have explained before, such evidence was relevant.

██  Plaintiff also contends that the court committed reversible error by giving instructions requiring plaintiff to prove that the "hook" was *unreasonably dangerous* to the user in violation of the rule announced in *Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121 (published subsequent to the trial of this case). The record reveals that the element of unreasonable danger was introduced into the trial below at the request of plaintiff by his offering of an instruction based on *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44 [46 Cal.Rptr. 552]. This instruction defined the word "defect" as including therein the element of "failure to warn."[1] The other instructions given by the court containing the

[1]The first appearance of the phrase "unreasonably dangerous" in the court's charge

questioned "unreasonably dangerous" language followed in sequence the giving of this instruction as requested by plaintiff. They were proper in that they defined the term "unreasonably dangerous" and told the jury they could consider all of the circumstances in determining this issue.[2] We do not understand that *Cronin v. J.B.E. Olson Corp., supra,* 8 Cal.3d 121, overrules the principle of law stated in *Canifax v. Hercules Powder Co., supra;* i.e., a product although faultlessly made, may be defective, if it is *unreasonably dangerous* to place the product in the hands of the user without a suitable warning.[3] In this case, failure to warn was one of the

appears in the following instruction requested by plaintiff-appellant:

The word "defect" as used in the previous instructions refers, not only to the condition of the product itself, but may include as well the failure to give directions or warnings as to the use of the product in order to prevent it from being unreasonably dangerous. If directions or warnings as to the use of a particular product are reasonably required in order to prevent the use of such product from becoming unreasonably dangerous, the failure to give such warnings or directions, if any, renders the product defective, as that word is used in these instructions. (Plaintiff's Proposed Instruction No. 26; citing *Canifax v. Hercules Powder Co., supra.*)

This instruction was preceded by the giving of the classical instructions on strict liability based on *Greenman* and *Vandermark* and BAJI No. 218 also given at plaintiff's request.

[2]Immediately following the instruction quoted in footnote 1 the court gave defendants' requested instructions herein set forth in sequence as read at the trial:

"You are instructed that in deciding whether or not the product was unreasonably dangerous and unsafe for its intended use you should consider all of the surrounding facts and circumstances as shown by the evidence in this case, including the evidence as to the circumstances under which the product was manufactured, purchased and the use to which it was put in this case. (Defendants' Requested Instruction No. — (unnumbered).)"

"The manufacturer of an article who places it on the market for use under circumstances where he knows that such article will be used without inspection for defects in the particular part, mechanism, or design which is claimed to have been defective, is liable for injuries proximately caused by defects in the manufacture or design of the article which caused it to be unreasonably dangerous and unsafe for its intended use and of which the user was not aware.

"An article is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

"The plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove each of the foregoing conditions. (Defendants' Requested Instruction No. — (unnumbered).)"

It will be noted that these instructions provide guides for the jury in arriving at the conclusion as to whether failure to warn renders a product defective in the sense contemplated by Plaintiff's Proposed Instruction No. 26 (fn. 1).

The phrase "unreasonably dangerous" is used once again following the instruction herein mentioned when the court instructed at defendants' request that plaintiff must establish that "[t]he defect, if it existed, made the hook unreasonably dangerous and unsafe for its intended use." This is a proper rule of law in a situation where *the claimed defect is the* failure to warn. See *Canifax v. Hercules Powder Co., supra.*

[3]The rule of *Canifax v. Hercules Powder Co., supra,* is an enlargement upon the rule of *Greenman v. Yuba Power Products, Inc., supra,* 59 Cal.2d 57, which is expressly confined

principal theories on which plaintiff-appellant presented his case to the jury. Furthermore, since the challenged language was offered by plaintiff-appellant, he cannot complain of the court's enlargement upon it at the trial at the request of his opponent. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 243, p. 3057.)

■   In concluding, we analyze this case upon the issues as stated in plaintiff-appellant's opening brief: ". . . the main issues to be determined by the jury were: 1. Whether the hook was defective because defendants failed to provide warnings of its proper use and capacity; 2. Whether plaintiff's use of the hook for lifting was reasonably foreseeable to the manufacturer." It should be obvious that the second issue, foreseeability of the use, is the main issue in this case, because there is no duty to warn against a use that is not reasonably foreseeable. (*Oakes* v. *E.I. Du Pont de Nemours, supra,* 272 Cal.App.2d 645 at p. 648; *Magee* v. *Wyeth Laboratories, Inc.* (1963) 214 Cal.App.2d 340 [29 Cal.Rptr. 322]; 2 Hursh & Bailey, American Law of Products Liability (1974) § 8:12, p. 174; Cotchett & Cartwright, Cal. Products Liability Actions (1970) § 8.04[4], p. 365.) Since the issue of foreseeability was a question of fact submitted to the jury on evidence, unaffected by error, which we hold sufficient to support a finding of nonforeseeability, the general verdict in favor of defendants is conclusive against plaintiff on this appeal regardless of whether the "hook" was claimed to be defective under *Greenman* or *Canifax.* (*Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 369 [317 P.2d 601]; *McCloud* v. *Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 935 [97 Cal.Rptr. 910].) On the other hand, since plaintiff-appellant admits that his main claim of defect in this case is based upon a failure to warn, there was no error in the instructions; therefore that issue was submitted on proper instructions and decided against plaintiff. Also any

to *defect* or *design* in *manufacture.* (See *Cronin* v. *J.B.E. Olson, supra,* 8 Cal.3d 121, at p. 134.) Based upon the Restatement, *Canifax* extends the rule of *Greenman* so as to make an otherwise faultless product defective if a failure to warn rendered it unreasonably dangerous. Corroborative of this interpretation is the case of *Oakes* v. *E.I. Du Pont de Nemours* (1969) 272 Cal.App.2d 645 [77 Cal.Rptr. 709], where at page 648 the court generally expresses the same idea. It does not necessarily follow that the Supreme Court would reject this expansion of the *Greenman* rule because it rejects the Restatement's particular enlargement referred to in *Cronin.* The inclusion of the element of "unreasonably dangerous" when applied to a duty to warn is entirely different than when applied to a defect in design or manufacture. The rule of *Canifax* has been followed in several California Court of Appeal cases as late as *Cravens, Dargan & Co.* v. *Pacific Indemn. Co.* (1972) 29 Cal.App.3d 594 [105 Cal.Rptr. 607]; it is cited by the Supreme Court with approval in *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229].

error in the giving of instructions, if there were any, was invited error as previously indicated.

For the foregoing reasons the judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied March 5, 1975, and appellant's petition for a hearing by the Supreme Court was denied April 2, 1975.