[Civ. No. 15286. Fourth Dist., Div. Two. Mar. 23, 1976.]

CARMEN FOGLIO, a Minor, etc., Plaintiff and Appellant, v.
WESTERN AUTO SUPPLY et al., Defendants and Respondents.

## COUNSEL

Rager, Rager, Winstead & Bright and William P. Winstead for Plaintiff and Appellant.

Chase, Rotchford, Drukker & Bogust, E. Michael Kaiser, Wilson, Borror & Dunn and Caywood J. Borror for Defendants and Respondents.

## OPINION

**TAMURA, Acting P. J.**—Plaintiff, a minor, brought the instant action for damages for the loss of an eye when he was allegedly struck by a projectile discharged from a rotary power lawnmower manufactured by defendant M.T.D. Corporation (M.T.D.) and sold by defendant Western Auto Supply Corporation (Western Auto). Plaintiff's action was based solely on the theory of strict liability of a manufacturer or distributor for marketing a defectively designed product. A jury trial resulted in a defense verdict and plaintiff appeals from the ensuing judgment for defendants.

Since plaintiff's contentions on appeal concern the propriety of certain instructions, the following brief summary of the pertinent facts will suffice.

The rotary power mower in question had been manufactured by M.T.D. between November 1959 and May 1960. A Mr. Robert Harris bought it from Western Auto sometime between 1959 and 1961. After using the mower for about six years, Mr. Harris gave it to his son and daughter-in-law (Mrs. Harris).

On April 28, 1970, Mrs. Harris was using the mower to cut her neighbor's front lawn. Plaintiff (then four years old) and his mother were on the sidewalk in front of the neighbor's house. As Mrs. Harris was running the mower away from the sidewalk along a chain link fence, she heard a "clink" sound. She was then 25 to 30 feet away from the sidewalk. Mrs. Harris turned around and saw that plaintiff's left eye was bleeding. He was taken to a hospital where it was determined that he had suffered a severe penetrating laceration of the cornea of his left eye. As a result of the injury, plaintiff's eye was rendered blind and disfigured.

Plaintiff's engineering expert testified that in his opinion the mower was defective in two respects: (1) The back edge of the deck of the mower was a quarter of an inch higher off the ground than the sides of the deck; and (2) the mower was not equipped with any protective device such as a closely woven metal netting or a metal drag plate.

The defense adduced evidence showing that when the mower was manufactured there were no published standards of any kind for rotary power mowers; none of the more than 300 manufacturers of rotary power mowers then had any metal chain link devices or drag plates on their mowers; and contrary to the testimony of plaintiff's expert, the mower blade, instead of lowering, rises when it is rotating.

The mower blade had been replaced and, as of the date of trial, the height of the wheels was not properly adjusted. The yard in which Mrs. Harris was working was neglected; it had bare spots as well as tall weeds and matted grass. Mrs. Harris, however, testified that she cleared the yard of rocks and debris before running the mower.

## I

Plaintiff contends that the court erred in' rendering the following instruction: "The defect just referred to may consist of a defect in design. [¶] A defective design is such that the design itself subjects a user or bystander to an unreasonable risk of harm from the reasonable and intended use of the product. [¶] The nondefective design of a product does not require that the latest, best, or safest design be utilized." For the reasons to be stated, we have concluded that plaintiff's contention is meritorious.

In *Cronin* v. *J. B. E. Olson Corp.,* 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], the court laid to rest the confusion which had theretofore existed in California concerning the proper formulation of the principle of strict liability for the manufacture or sale of a defective product. The court noted that in numerous cases following *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], both the Supreme Court and Courts of Appeal erroneously assumed that section 402A of Restatement Second of Torts expressed the *Greenman* rule. Section 402A of the Restatement provides that "[o]ne who sells any product in a defective condition *unreasonably dangerous* to

the user or consumer" is subject to liability.[1] (Italics supplied.) *Cronin* held that the Restatement standard would require a plaintiff to prove not only that a product was defective but also that the defect made the product "unreasonably dangerous" to the user or consumer. This, the court held, would burden a plaintiff with proof of an element which "rings of negligence" and is inconsistent with the rule enunciated in *Greenman*. The court observed that while the words "unreasonably dangerous" may serve "the beneficial purpose of preventing the seller from being treated as the insurer of its products," ."that such protective end is attained by the necessity of proving that there was a defect in the manufacture or design of the product and that such defect was a proximate cause of the injuries. . . ." (8 Cal.3d at p. 133.) Under *Greenman*, "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (59 Cal.2d at p. 62.) *Cronin* emphasizes that in California a plaintiff in a product liability case has met his burden if he establishes the foregoing elements.

■ In the case at bench plaintiff's sole theory of recovery was strict liability for an allegedly defective design. Yet the instruction rendered by the court defining a design defect placed on plaintiff the burden of proving not only that the product was defectively designed but that the defect subjected a user or bystander to "an unreasonable risk of harm." As such, the instruction erroneously imports the concept of negligence into a strict liability case. The difference between the phrase "unreasonable risk of harm" used in the instruction and the phrase "unreasonably dangerous" disapproved in *Cronin* is a distinction without a difference.

Defendants contend that the instruction in question did not impose an added burden on plaintiff because the jury had been correctly instructed on the issues on which plaintiff had the burden of proof. The general instruction on burden of proof did state that plaintiff had the burden of proving "[t]hat the article was defective."[2] The court, however, went on

---

[1]Section 402A of the Restatement Second of Torts provides in pertinent part:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, . . ."

[2]The court gave the following instruction on burden of proof:
"In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

to explain to the jury that a manufacturer or distributor of an article is liable for injuries proximately caused by a "defect in the article"[3] and then gave the questioned instruction prefaced by the statement: "The defect just referred to may consist of a defect in design." The combined effect of these instructions was to tell the jury that to establish liability for a design defect, plaintiff has the burden of proving the existence of a design defect and that such defect exposed a user or bystander to an "unreasonable risk of harm."

Defendants' contention that *Cronin* is distinguishable because it involved a manufacturing defect rather than a design defect is without merit. *Cronin* specifically addressed itself to this issue by declaring that the *Greenman* rule is applicable to the "full range of product liability situations, including those involving 'design defects'" and that "a distinction between manufacture and design defects is not tenable." (8 Cal.3d at p. 134.) The court further went on to say: "[W]e find no reason why a different standard, and one harder to meet, should apply to defects which plague entire product lines. We recognize that it is more damaging to a manufacturer to have an entire line condemned, so to speak, for a defect in design, than a single product for a defect in manufacture. But the potential economic loss to a manufacturer should not be reflected in a different standard of proof for an injured consumer." (8 Cal.3d at p. 134.)

Defendants rely on certain language in our decision in *Thomas* v. *General Motors Corp.*, 13 Cal.App.3d 81, 88 [91 Cal.Rptr. 301], as the basis for the instruction in question. In *Thomas* we relied upon *Pike* v. *Frank G. Hough Co.*, 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229], for the proposition that a product may be defective if "its design subjects

---

"1. Defendant's status as a manufacturer or distributor;
"2. That the article was defective;
"3. That the defect existed when the article left possession of the defendant;
"4. That the article was used in a manner reasonably foreseeable by the defendant;
"5. That the defect was a proximate cause of the injury to plaintiff;
"6. The nature and extent of injuries.
"The defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:
"None."

[3]The court gave the following instruction on the liability of manufacturers and distributors for injuries caused by a defective product: "The (manufacturer and distributor) of an article is liable for injuries proximately caused by a defect in the article which existed when the article left possession of the defendant(s), provided that the injury resulted from a use of the article that was reasonably foreseeable by the defendant(s)."

protected persons to unreasonable risk." (13 Cal.App.3d at p. 88.) However, as we have noted, *Cronin* repudiated any suggestion in *Pike* that the Restatement correctly articulates the *Greenman* rule. *Cronin*, of course, supersedes any language in *Thomas* expressing the doctrine in the terms used by the Restatement.

Defendants also rely on certain statements in *Dosier v. Wilcox-Crittendon Co.*, 45 Cal.App.3d 74 [119 Cal.Rptr. 135], and *Balido v. Improved Machinery, Inc.*, 29 Cal.App.3d 633 [105 Cal.Rptr. 890]. Neither case conflicts with the conclusion we have reached in the case at bench. In *Dosier*, the reviewing court rejected plaintiff-appellant's attack on a strict liability instruction containing the concept of "unreasonably dangerous" for two reasons: First, the court held that plaintiff was precluded from challenging the instruction because he was the one who requested an instruction which introduced that element into the case. Secondly, the reviewing court was of the view that where, unlike *Cronin*, the theory of recovery is based on a defect due to failure to warn (not a manufacture or design defect) the unreasonable risk standard may be appropriate. We need not pass on the validity of this distinction because in the case at bench liability is predicated on a design defect and not on a defect due to failure to warn.

In *Balido*, the trial court granted a nonsuit in favor of a manufacturer of a product which, for the purpose of the motion, was conceded to be defectively designed. The trial judge decided that the manufacturer was relieved of liability because of the passage of time between the defective design and injury (approximately 15 years) and because of multiple warnings given by the manufacturer to the owner of the product. The reviewing court reversed the judgment as to the manufacturer on the ground that the effect of those factors on the issue of causation was for the trier of fact. The statement which defendants extract from the *Balido* opinion concerning a manufacturer's liability for defective design of a product was dictum and to the extent it conflicts with *Cronin*, the latter, of course, controls.[4]

---

[4] The statement from *Balido* to which we have been directed is as follows: "Strict liability for deficient design of a product (as differentiated from defective manufacture or defective composition) is premised on a finding that the product was unreasonably dangerous for its intended use, and in turn, the unreasonableness of the danger must necessarily be derived from the state of the art at the time of design." (29 Cal.App.3d at p. 640.)

It is noted that *Balido* made no reference to *Cronin*, undoubtedly because *Cronin* was decided only a short time before the *Balido* decision was filed.

We conclude that the rendition of the instruction on the definition of design defect was error.

## II

■ Plaintiff also contends that the court erred in giving the following instruction on the effect to be given evidence of custom or practice in the trade or industry: "Evidence as to whether or not the defendant conformed to a custom or practice that had grown up in a given business at the time the lawnmower was manufactured ought to be considered on the question whether or not the defendant exercised reasonable care in the design of the subject lawnmower. What weight should be given to such evidence is for you to decide."

Plaintiff's contention is valid. The quoted instruction is an adaptation of BAJI No. 3.16 which is designed for use where liability is predicated on negligence. In a strict liability case based on a defect in design, the issue is not whether defendant exercised reasonable care in designing the product. (*Cronin* v. *J. B. E. Olson Corp., supra,* 8 Cal.3d 121, 133-134.) The rendition of the quoted instruction was manifest error.

## III

■ The remaining question is whether the giving of the erroneous instructions requires reversal. We hold that it does.

We cannot determine from the general verdict whether the jury found that plaintiff failed to prove that the mower had a design defect or that the injury was the proximate result of the claimed defect, or whether, based upon the erroneous instructions, it found that the mower was defectively designed but that plaintiff failed to prove the defect posed "an unreasonable risk of harm" to users or bystanders or that defendants had exercised "reasonable care" in designing the product. Where it seems probable that a general verdict may have been based on an erroneous instruction, prejudice appears and a reviewing court should not speculate on the basis of the verdict. (*Henderson* v. *Harnischfeger Corp.,* 12 Cal.3d 663, 670-671 [117 Cal.Rptr. 1, 527 P.2d 353]; *Luque* v. *McLean,* 8 Cal.3d 136, 146-147 [104 Cal.Rptr. 443, 501 P.2d 1163];

*Stockstill* v. *South Laguna Disposal Co.,* 1 Cal.App.3d 1022, 1028 [82 Cal.Rptr. 268].)

Judgment is reversed.

Kaufman, J., and McDaniel, J., concurred.

Petitions for a rehearing were denied April 13, 1976, and respondents' petitions for a hearing by the Supreme Court were denied May 19, 1976.