Valerie T. BAILEY et al., Appellants,

v.

BOATLAND OF HOUSTON,
INC., Appellee.

No. 17323.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 28, 1979.

Rehearing Denied Aug. 16, 1979.

Kronzer, Abraham & Watkins, James E. Robinson, Houston, for appellants.

Butler, Binion, Rice, Cook & Knapp, Donald B. McFall, Richard E. Gray, III, Houston, for appellee.

WALLACE, Justice.

This is an appeal from a judgment denying recovery on a wrongful death action brought by the surviving widow and two adult children of Samuel Bailey, who was

killed in a boating accident on May 27, 1973, on Lake Livingston. The action was based on strict products liability in tort against the seller of the bass boat deceased was operating at the time of his death.

The jury answered adversely to appellants special issues inquiring whether:

(1) The boat in question was defective,

(2) Decedent misused the boat in question,

(3) Decedent failed to follow proper warnings and instructions,

(4) Decedent assumed the risk of his death.

Based upon these answers the trial court entered judgment for defendant. On appeal, appellants contend that the evidence was such that the boat's defective condition at the time it was sold by appellee was established as a matter of law, or the jury's findings of "no defect" are against the great weight and preponderance of the evidence; that the trial court erred in admitting "state of the art" evidence; and that the evidence was insufficient to raise the defensive issues of assumption of the risk, misuse, and failure to follow warnings.

■ Appellants' first point of error is directed to the trial court's exclusion of a part of the testimony of the witness Jim Buller. The location of the accident was shown by other testimony, so that part of Buller's testimony which was excluded would have been cumulative on this point, and it is overruled.

■ In appellants' points of error numbers two and three, they contend that the boat in question was defective as a matter of law. Further, they contend that the evidence of defect was so overwhelming that the jury finding to the contrary was manifestly wrong and unjust. A review of the record reveals evidence that the boat in question was not defective. The testimony of the three experts called by appellee was factually sufficient to support the issue. These points are overruled.

■ Appellants' fourth point of error is directed to the admissibility of evidence establishing the existing state of technological advancement in the boating industry in regards to certain safety features, the absence of which appellants assert render the boat in question defectively designed so as to be "unreasonably dangerous," primarily because there were no devices installed which would automatically kill the engine in the event the operator was thrown from the boat. Appellants' pretrial motion to exclude any evidence which would suggest the unavailability of kill switches at the time of the manufacture and sale of the boat in question was overruled. Appellants were granted a running objection to such state of the art evidence. By point of error number four, appellants assert the trial court erred in overruling their objection and allowing appellee to introduce evidence of the unavailability of kill switches. Such evidence is relevant only to the issue of care by appellee, which is not a defense in a strict tort liability action. We agree with appellants and this point is sustained.

Testimony was elicited by appellants from the inventor of kill switches that such a device was a relatively simple mechanical one that would significantly increase the safety of boats and would probably have prevented the accident. Appellants also inquired into the date of the development of the kill switch (November 1972) and the date the inventor applied for a patent on the device (January 1973). The date of the accident in question was May 27, 1973. Additionally, the inventor testified that the concept of kill switches was not new and that the National Outboard Association had been using various types of kill switches for thirty years on racing boats.

Appellee elicited testimony from the inventor that no one knew of the specifics of his invention prior to his obtaining a patent and manufacturing the switch. Additionally, the inventor testified that his switch was not marketed until August of 1974 and his investigation prior to this time revealed no

other such devices were marketed although he knew of individuals who made "home-made" kill switches.

Appellee introduced testimony from its expert witnesses to the effect that kill switches as a concept existed and various kinds were in limited use prior to the manufacture of the boat in question. However, none were commercially available at the time. Further, it was not the accepted industrial practice to place kill switches on bass boats because they were not available.

It is the admissibility of this evidence that appellants strenuously objected to at the time of trial and of which they now complain on appeal as reversible error. Appellants' position is that the "unavailability" evidence admitted in this case is immaterial in a strict liability action. They assert such evidence could only be relevant to establish "care" on the part of the manufacturer in designing the boat, and that is not in issue.

An extensive review of products liability caselaw reveals the question of the admissibility and relevancy of state of the art evidence has not been addressed in Texas and the holdings in other jurisdictions are not in agreement. Two divergent philosophies have developed leading to opposite conclusions.

■ The argument advanced in favor of the admissibility of state of the art evidence is that it is relevant to show a product is not defective as defined by the Restatement. Murray, *The State of the Art Defense in Strict Products Liability*, 57 Marq. L.Rev. 649 (1974); Fromer & Friedman, *Products Liability*, § 16A(4)(i). The Restatement provides that in order to impose strict liability:

"The article must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common in the community as to its characteristics." Restatement (2nd) of Torts § 402A, comment I at 352–53 (1965).

Thus, to establish liability under § 402A the plaintiff must show the product was dangerous beyond the expectation of the ordinary consumer. Proponents of the admissibility of state of the art evidence argue:

"Since whether or not a product is defective depends upon whether or not the danger involved in its use would be apparent to a reasonable consumer, state of the art evidence can be useful in establishing that the product involved is similar to all other products of that type and therefore an ordinary consumer . . . with the ordinary knowledge common to the community as to its characteristics would have realized the potential danger . . . Since the machine represented the highest degree of safety attainable at the time, as evidenced by other manufacturers' products, while still being functional it was not defective because it didn't present a danger which would not be anticipated by a reasonable consumer." Murray, *supra* at p. 654, 655.

See also *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976). We do not feel, however, that the intent and purpose of strict tort liability would be satisfied by the expectations of consumers being defined by the actions of manufacturers and suppliers whose products may be defective. This philosophy presupposes that the expectation of an ordinary consumer as to the safety of a product is determined by generally accepted trade practices within the industry. That line of reasoning requires the presumption that an ordinary consumer is aware of all the technical expertise of the manufacturers, who are charged with having expert knowledge in the field. The expectation of the ordinary consumer should be based on experience with the product itself, not the expert technological knowledge of the manufacturers within the industry.

■ Several jurisdictions and commentators have reached the conclusion that state of the art evidence is not relevant to a strict liability action. *Foglio v. Western*

*Auto Supply,* 56 Cal.App.3d 470, 128 Cal. Rptr. 545 (1976); *Cunningham v. MacNeal Memorial Hospital,* 47 Ill.2d 443, 266 N.E.2d 897 (1970); *Mathews v. Stewart Warner Corp.,* 20 Ill.App.3d 470, 314 N.E.2d 683 (1974); *McKasson v. Zimmer Mfg. Co.,* 12 Ill.App.3d 429, 299 N.E.2d 38 (1973); Scarzafava, *An Analysis of Products Liability Defenses,* 9 St. Mary's L.J. 261 (1977); Karasik, *"State of the Art or Science": It is a Defense to Products Liability?* 60 Ill.B.J. 348 (1972). The argument advanced for this position is that the express provisions of the Restatement provide strict tort liability for a dangerously defective product will be imposed notwithstanding "the seller has exercised all possible care in the preparation and sale of his product." Restatement of Torts (2d) § 402A. Therefore, evidence pertaining to the existing state of the art addresses the irrelevant issue of care. To allow a defense to strict liability on the basis a product was made in accordance with the best available practices and existing technology in the industry at the time of production, it is argued, would emasculate the doctrine of strict tort liability and "signal a return to a negligence theory." *Cunningham v. MacNeal Memorial Hospital, supra,* 266 N.E.2d at p. 902. We agree.

In *McKisson v. Sales Affiliate, Inc.,* 416 S.W.2d 787 (Tex.1967), the court adopted the rule of strict liability in Texas as stated in Section 402A of the Restatement (2nd) of Torts. The Supreme Court has since recognized that that decision represented "our yield to the irrefutable logic that the rule of strict liability is the only practical vehicle for protecting the public against harm caused by a defective product. *Pittsburg Coca Cola Bottling Works of Pittsburg v. Ponder,* 443 S.W.2d 546 (Tex.1969).

Section 402A of the Restatement (2nd) of Torts provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user . .

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product . . . "

The rationale for the doctrine of strict liability is stated in comment C to Restatement, Section 402A, which provides:

On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed special responsibility toward any member of the consuming public who may be injured by it; that the public has a right to and does expect, in the care of products for which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by the products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum protection at the hands of someone, and the proper persons to afford it are those who market the products." (at p. 349–50).

In the recent case of *Turner v. General Motors,* 584 S.W.2d 844, 1979), the court expressly held that a definition of unreasonably dangerous should not be submitted to the jury. The court stated:

"We are persuaded to this conclusion by the inconclusiveness of the idea that jurors would know what ordinary consumers would expect in the consumption or use of a product, or that jurors would or could apply any standard or test outside that of their experiences and expectations. . . *. The stated reason for the alternative test of the prudent manufacturer does not justify its continued use." (at p. 851)

Nonetheless, the majority suggested the trial court committed error, although harmless, in failing to submit the prudent manu-

facturer element of the disjunctive test of an "unreasonably dangerous" product. The prudent manufacturer element is not included in the Restatement definition of "unreasonably dangerous." Justice Campbell, in a concurring opinion, states:

"In overruling this court's prior decisions by discarding the Restatement's definition of *unreasonably dangerous,* the majority opinion fails to give due cognizance to the underlying policy and purpose of strict liability in tort, merges strict liability into negligence liability, and for all practical purposes abolishes strict liability in tort as to defective design. Liability for negligence is imposed for violation of a legal duty to exercise the care of an ordinary prudent person under the same or similar circumstances. Strict liability in tort of a manufacturer who places a defective product in the stream of commerce is imposed, not for violation of a duty to exercise due care, but because public policy favors imposition of the burden of a defective product upon the manufacturer instead of the consumer. The public interest in human safety requires the maximum possible protection for the user of the product; the manufacturer is in a better position to know the potential dangers in the product and test for and guard against same while the consumer generally must and does rely on the manufacturer's skill, knowledge and warnings of unexpected dangers; and, generally the manufacturer is in a better position to bear the loss from a faultless but dangerous product than is the consumer. James, General Products—Should Manufacturers Be Liable Without Negligence? 24 Tenn.L.Rev. 923 (1957); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791 (1966); Keeton, Products Liability—Some Observations About Allocation Risks, 64 Mich. L.Rev. 1329 (1966)." (at p. 853).

This position is consistent with prior Supreme Court decisions. In *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871 (Tex.1978) the court took the position that a distinction must be drawn between strict liability and negligence actions. The court stated:

" . . . The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production."

In *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977) our supreme court said:

"[Liability of a supplier does not rest] upon what he knew or should have known when he manufactured or sold the product; it rests upon his placing into the stream of commerce a product which is demonstrated at the trial to have been dangerous."

Similarly, Professor Green in his article entitled *Strict Liability Under Sections 402A and 402B: A Decade of Litigation,* 54 Tex. L.Rev. 1185, 1210 (1976), states:

"The violation of the seller's duty involves only a specific product—the thing. Its measurement has no similarity to the measurement of the *conduct* of the defendant in a negligence case by the conduct of the ordinary prudent man. In products liability, the measure is the dangerously defective quality of the specific product in the litigation—not the average of products of the same kind."

■ The trial court erred in admitting evidence of the unavailability of kill switches at the time of the manufacturing and selling of the boat in question. The focus in a strict liability case is on the product not the reasoning behind the manufacturer's adoption of the design or the care exercised by the manufacturer in making such decision.

■ This holding is not unduly harsh on defendants in strict liability cases. The

court in *Turner* expressly held that while the jury is not to be instructed to balance specifically enumerated factors to weigh the risk against the utility of the product, "evidence upon the factors of risk and utility such as those enumerated by the Court of Civil Appeals, as well as upon the expectations of the ordinary consumer, may be admissible in the trial of such cases." Those factors include: (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use: (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; and (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions. (at p. 846). The manufacturer is free to introduce all available evidence of the engineering and design features of the product in order to show that it is not unreasonably dangerous. However, this does not permit him to bolster his testimony by the cliche "But everyone else is doing it." .

The admission of the evidence of the unavailability of kill switches was erroneous. It did not address the "utility" of the product or establish the *process* by which the design was adopted but rather emphasized the care exercised by the manufacturer, and other manufacturers, in designing the boat in question. The care exercised by appellee is not in issue.

■ Appellants' sixth and seventh points of error are directed to the submission of the "misuse" issue to the jury. Appellants correctly contend that misuse can be based only on actions by appellants' deceased not reasonably foreseeable by appellee. *General Motors Corp. v. Hopkins*, supra *Magic Chef v. Sibley*, 546 S.W.2d 851 (Tex.Civ.

App.-San Antonio 1977, writ ref'd n. r. e.). Misuse is a defensive theory and the burden of proof was on appellee. The acts alleged by appellee to constitute misuse were (1) unsafe speed, (2) improper lookout, (3) permitting passengers to stand in the boat, (4) not having the motor in tilt position.

Appellee called as expert witnesses Mr. Hudson, who was founder of the company which designed and manufactured the bass boat in question. Mr. Cornelius, an officer of the company that bought the boat from Mr. Hudson's company and sold it to appellees, and Mr. Nessmith, founder and president of appellee corporation. Mr. Nessmith testified that when he sold the bass boat in question he was aware that it would be used in areas where there were submerged trees, brush and stumps; he was aware that people are thrown from boats; he was aware that if a person were thrown forward out of the boat in question, with stick steering and stick throttle controls, it would be likely that the controls would be pushed forward, increasing the speed of the boat and causing it to circle sharply to the right; and that he could anticipate the boat being operated with passengers standing. Mr. Nessmith further testified that he gave Mr. Bailey, the deceased, an instruction booklet warning him to operate the boat with the motor in tilt position while in an area of submerged objects. The warning was to the effect that the motor and boat might be damaged if an object was struck with the motor extended all the way down. This suggests that the appellee could reasonably anticipate that the boat might be operated with the motor down, rather than in a tilt position. The testimony of Mr. Hudson and Mr. Cornelius conformed with that of Mr. Nessmith on these points. All the acts alleged by appellee as "misuse" on the part of the deceased were reasonably anticipated by appellee. The misuse issue should not have been submitted.

■ Appellants' ninth, tenth and eleventh points of error are directed to the submission of the warnings issue. Warn-

ings and instructions issues in a strict liability case must be directed to the defects alleged to have caused the plaintiff's injury. Appellee states in its brief that it does not contend that warnings was a defense in this case. If it was not a defense, the issue should not have been submitted.

■ Appellants' twelfth and thirteenth points of error are directed to the submission of the assumption of the risk issue. This was a defensive issue and it was incumbent on appellee to provide evidence that the deceased was aware of the dangers resulting from the defects complained of, and further, that he voluntarily assumed the risk produced by such danger. *Henderson v. Ford Motor Company,* 519 S.W.2d 87 (Tex.1974). The record is completely silent as to any such knowledge on the part of the deceased. Appellee produced evidence only to show that the deceased was a fisherman who was familiar with the area where the accident occurred, was familiar with the operation of boats, and was familiar with the weather conditions on the date of the accident. This evidence did not touch on the essentials of "assumption of the risk": that the deceased was aware of the defects made the basis of this suit and that with full knowledge of those defects and the dangers arising therefrom, he voluntarily assumed such risk. Appellants' twelfth and thirteenth points are sustained.

■ This brings us to the question of whether the effect of the admission of the evidence as to the unavailability of kill switches plus the submission of the defensive issues of misuse, assumption of the risk and failure to obey warnings, when combined, were sufficient to prejudice the appellants in the presentation of their case and influence the jury in determining whether the boat in question was defective. We find that they did.

■ Appellants Paula Cherry and Jerry Bailey, adult children of the decedent, failed to assign error to the jury finding that they suffered no pecuniary loss as a result of their father's death, so any error on the liability issue is harmless as to these appellants. *Mitchell v. Chaparral Chrysler-Plymouth,* 572 S.W.2d 359 (Tex.Civ.App.-Fort Worth 1978, writ ref'd n. r. e.). The judgment of the trial court as to these appellants is therefore affirmed.

The judgment of the trial court as to appellant Valerie Bailey is severed and reversed, and as to her the cause is remanded for a new trial.

EVANS, Justice, dissenting.

I cannot agree with the majority of the court that evidence as to the availability of the kill-switch was inadmissible. As I read the Texas Supreme Court's decision in *Turner,* it holds that the jury is no longer to be instructed on the definition of "unreasonably dangerous". It does not hold that evidence as to the availability of a safety feature should not be considered by the jury, and, to the contrary, the court's opinion strongly suggests that such evidence is relevant to the jury's consideration of the design process.

The ultimate effect of the majority holding, if allowed to stand, is to impose absolute liability upon the manufacturer of any product which is not "unreasonably dangerous" at the time it is marketed, but which becomes so by reason of the subsequent invention and marketing of a safety feature making the product less dangerous to the consumer. If the consumer is permitted to offer evidence showing the applicability of a safety feature in the design process, the manufacturer should be allowed to offer evidence showing the relative cost and availability of the safety feature at the time the product is marketed. Unless the seller is permitted to show these circumstances, the jury is afforded only a partial view of the design process and, thus, does not have facts essential to an informed determination of whether the product was unreasonably dangerous.

Where a product is not unreasonably dangerous at the time it is marketed and be-

comes so only when some later invention makes it function with greater safety, evidence regarding the availability of the new invention should, in my opinion, be admitted for the jury's consideration. Contrary to the majority's statement that evidence of availability is relevant only to the question of the manufacturer's "care", such evidence is essential to any reasonable understanding of the process under and by which the particular design was adopted. If the jury is not allowed to consider such evidence, it may impose liability upon the manufacturer even though the safety item was not reasonably available at the time the product was marketed.

The absolute character of liability imposed by the majority is not, in my opinion, justified by *Turner* and constitutes a dangerous extension of the strict liability doctrine.

I would affirm the judgment of the trial court.