William Edward GREEN,
Plaintiff-Appellant,

Texas Employers' Insurance Assn.,
Intervenor-Appellant,

v.

The EDMANDS COMPANY, et al.,
Defendants-Appellees.

No. 80–1080
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 13, 1981.

Baron & Cowley, Jack Barry Cowley, Dallas, Tex., for Green.

Sharp, Ward, Rass & McDaniel, T. John Ward, Longview, Tex., for T.E.I.A.

Nichols & Parker, Rex A. Nichols, Longview, Tex., for defendants-appellees.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

Plaintiff in this action, William Edward Green, brought suit against The Wanskuck Company and its division, The Edmands Company (hereinafter "Edmands"), pursuant to diversity jurisdiction in the United States District Court for the Eastern District of Texas. Plaintiff sought relief under Texas' doctrine of strict liability, alleging that a machine designed and manufactured by Edmands was defective, unreasonably dangerous to plaintiff, and that such defective condition had caused plaintiff's injuries. The jury returned a unanimous verdict on November 16, 1979, finding in answer to interrogatories that, (1) defendants' product was defective, unreasonably dangerous to plaintiff, and that the defective condition was a producing cause of the accident in question, (2) $80,000 would fairly and reasonably compensate the plaintiff for the injuries he sustained as a result of the accident and (3) plaintiff assumed the risk of the occurrence in question. The court then concluded from the third interrogatory that Green and the intervenor, Texas Employers' Insurance Association, would take nothing by reason of their suit. From this judgment plaintiff Green now appeals. We reverse in part, and remand.

Green was employed as a machine operator by Aluminum Corporation of America (ALCOA) at its Scottsville, Texas, plant. The plant, which produces electrical conduit cable, first employed the plaintiff in May, 1973, as a helper in the Finishing Department, and approximately a year and a half prior to the accident, Green was transferred to the job of "heavy machine operator." On February 7, 1977, Green serviced a machine designed, manufactured, and sold by the defendant. The machine, known in the industry as a "four-wire heavy duty twisting machine," twisted electrical fibers together in a fashion analogous to a spinning wheel to form one single electrical cable.

The machine was purposefully designed to require gear changes in order to vary the diameters of the cables produced from the electrical fibers. In order to change the diameter a machine operator was expected to first loosen the central gear with a wrench, and then, placing both hands around the sharply-pronged circumference, to pull the gear down and off the first shaft, lift it up, and place it on the top of a second shaft. Because the gearbox was located within a few feet of the floor, the machine operator was required to kneel on the ground in order to achieve visibility and leverage. On the day of the incident appellant Green followed exactly this procedure in order to vary the diameter of the cable width.

The gear in question weighed 52 pounds and was coated with oil from the machine's oil bath lubrication system. At the time of the injury appellant loosened the gear with an Allen wrench, placed his hands around the circumference of the gear, and began to pull it downward along the shaft. As he pulled, the gear slipped off the end of the shaft, fell to the ground, and crushed Green's left ring finger.

Believing that he had severed his finger, appellant sought immediate attention from ALCOA's company physician, Dr. Cash. Cash sewed off the artery and then stitched the severed skin back together. Following this primary care, appellant underwent surgery on three occasions, and following the second surgery, developed blood clots in his left leg and was treated for phlebitis. Shortly after the operation to remove blood clots from appellant's leg, Green's surgeon, Dr. John Adams, referred appellant to a psychiatrist in Shreveport, Louisiana, Dr. William Wilkinson, who treated Green for "severe depression" for approximately two years. Between January, 1978, and May, 1978, while under Wilkinson's supervision, appellant was hospitalized for treatment of the depression.

Appellant originally brought suit against The Edmands Company in two counts, one in negligence and one in strict liability. At the close of the evidence, however, the court refused to instruct the jury on the negligence count as requested by appellant. Furthermore, over counsel's objection, the court instructed the jury that if appellant had assumed the risk of using appellee's product, appellant would not be entitled to recover for his injuries.

On appeal we are faced with the following questions:

(1) Whether the trial court committed reversible error in refusing to submit appellant's requested jury instructions for recovery based on negligence?

(2) Whether there was insufficient evidence, as a matter of law, to justify the submission of the assumption of risk instruction to the jury?

(3) Whether the trial court's formula for discounting future damages was more stringent than the law required?

(4) Whether the trial court committed reversible error in refusing to admit evidence of appellant's auxiliary employment benefits?

■ The trial court refused to grant appellant's requested instructions in negligence on the ground that there was insufficient evidence as a matter of law to justify the submission of the issue to the jury. Having carefully reviewed the record, including the transcript from trial, we agree with the trial judge. The transcript reveals that appellant tried his suit and introduced evidence based, primarily if not entirely, upon a theory of strict liability. Having failed to receive the expected results below, appellant may not now claim reversible error on the ground that a negligence instruction should have been submitted to the jury when insufficient evidence was presented at trial to justify such a submission.

Although appellant designates three separate witnesses as having introduced evidence of an industry-wide standard of care, we do not find this claim supported by the transcript. A careful reading of the testimony of appellant's witnesses, John Gustafson, Gerald Rennell, and Perry Zetterlund, yields little testimony which could be construed to establish a violation of the standard of due care. We are further persuaded by appellant's opening statement to the jury, where counsel stated:

I have requested a jury in this case, because I want people like you to decide the justice in this case for Mr. Green. I want you to decide whether this machine was defective, and unreasonably dangerous. That is the whole issue.

Tr. Trans., 17–18.

We conclude that appellant failed to introduce sufficient evidence to justify a negligence instruction to the jury.

■ Turning next to the question whether there was sufficient evidence to justify the submission of an assumption of risk instruction to the jury, we find appel-

lant's position meritorious. "The function of the reviewing court with respect to instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law."[1] Applying this principle to the facts before us, we agree that the submission of the instruction on assumption of risk was not justified by the evidence. The internal inconsistency of the interrogatories suggests that the instructions had the effect of misleading the jury with respect to the ultimate issue of liability, and the minimal requirements for a finding of assumption of risk were unsupported by the evidence.

Assumption of risk is, of course, a proper defense to a strict liability suit. This court, in a diversity appeal, is required to apply the law of the forum in considering the substantive right under which the case is brought,[2] and the Texas Supreme Court clearly established in *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 90 (Tex.1975), that "the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section [§ 402A of the Restatement Second, Torts] as in other cases of strict liability."

In 1967 Texas extended the tort theory of strict liability set forth in § 402A to defective products which cause physical harm to persons.[3] Because appellant brings suit under § 402A, we are bound to apply the rulings of the Texas courts which have interpreted and applied that provision. In *Maxey v. Freightliner Corp.*, 623 F.2d 395 (5th Cir. 1980),[4] this court, in a diversity appeal originating in Texas, considered a suit which had been brought on behalf of

the children of a truck driver who was killed when the fuel tanks on a tractor trailer he was driving ruptured and ignited. The district court set aside the jury's verdict that plaintiffs' decedent had assumed the risk by use of the manufacturer's product on the ground that assumption of risk was unsupported by the evidence. The Fifth Circuit affirmed, setting forth the standards which governed its determination:

> Knowledge of the *specific defect* and appreciation of the dangers created by the defect are required to sustain a finding of assumption of the risk. *Bailey v. Boatland*, 585 S.W.2d 805 (Tex.Civ.App.— Houston 1979). Cases in Texas on *Volenti* or assumption of the risk are clear in *requiring subjective knowledge and intelligent appreciation of the specific danger involved.* [Emphasis added.]

In *Rabb v. Coleman,* 469 S.W.2d 384 [, 387] (Tex.1971), the Supreme Court of Texas stated:

> The intelligent choice to expose oneself to a danger presupposes *an awareness of that particular danger.* The success of the *volenti* defense in Texas cases has turned on whether or not it was established that the plaintiff knew he was exposing himself to the danger which in fact caused him harm.

623 F.2d at 399.

Similarly, in *Henderson v. Ford Motor Company,* 519 S.W.2d 87, 91 (Tex.1974), the Supreme Court of Texas formulated the test this way:

> We do recognize that the assumption of risk defense requires a *voluntary* encounter with the *danger of risk*—which means by free and intelligent choice .... [In determining] whether an issue of assump-

---

1. Wright & Miller, *Federal Practice and Procedure: Civil,* § 2558; *see also Delancey v. Motichek Towing Service, Inc.,* 427 F.2d 897, 901–902 (5th Cir. 1970).

2. *Klaxon v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

3. *See McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967).

4. We cite this opinion recognizing that the case is under en banc consideration by the full court upon an issue not involved in this case. Under our en banc procedure the entire opinion was vacated. However, we take the liberty of citing the case because of its accurate statement of the Texas law, and we do not cite it as precedence as we are not permitted to do so since the opinion has been vacated.

tion of risk was raised by the evidence ... under the Texas cases the inquiry is whether Mrs. Henderson voluntarily exposed herself to the risk with knowledge and appreciation of the danger.

As these cases make clear, the mere fact that an individual might have, or should have, been aware of the particular risk, is insufficient to establish the defense. As a matter of law, evidence of voluntariness is an absolute prerequisite for submission of the instruction to the jury. An individual who has no choice but to encounter the risk cannot be found to have voluntarily encountered the risk. The trial court accurately set forth these requirements in its charge to the jury:

This [assumption of risk] is a subjective test. The Defendants must show that Plaintiff, himself, actually had knowledge and appreciation of the danger. A showing that Plaintiff should have known or appreciated the danger would not establish that Plaintiff assumed the risk at the time of the injury in question.

You are instructed that the Plaintiff's acceptance of a risk is not voluntary, if the Defendant's conduct has left him *no reasonable alternative* course of conduct in order to avert harm to himself or another, or to exercise or protect a right or privilege of which the Defendants have no right to deprive him.

Tr. Trans., 497–98 (emphasis added). With these requirements in mind, we consider the facts of this case.

Mr. George Green, Jr., a consulting engineer and the defendants' own witness, testified that the four-wire twisting machine was designed in order to require individuals to manually change gears according to the procedures which were followed by the appellant. Furthermore, defendants failed to introduce evidence that Green had engaged in procedures unanticipated by the manufacturer in changing the gear in question. In fact, the company's expert witness confirmed that the "machine was designed so that workers had to put their hands around the teeth of the gear to change the gears" [5]

and admitted that although alternative methods could have been devised to avoid manual gear changes, none was provided. One alternative would have been to provide "T-wrenches" which could be used to grasp the gear prongs and eliminate the necessity of gripping the gear barehanded. In response to the question "[A]re the T-wrenches any aid in moving it [the gear] from one shaft to another?", defendants' witness responded:

I think the T-wrenches in this particular installation, sir, would serve a purpose, sir, and assist the operator. One thing it gets him off—up off the floor a little bit. Since this thing is installed down in a pit it's very difficult for him to reach it. He doesn't have to reach under the gear to be able to pull it off. He can reach the T-handles which give him an additional four, five or six inches of height.

Tr. Trans., 408. Nevertheless, defendants failed to provide T-wrenches, or any other alternatives, but rather anticipated that operators would use their hands. Appellant did so and was injured.

▉ Looking to the instructions given by the trial court and considering, again, that voluntariness is a mandatory prerequisite to a finding of assumption of risk, the evidence presented at trial cannot be squared with the minimal legal requirements for submission of assumption of risk instructions to the jury. The trial court's assumption of risk charge accurately summarized the law in stating that "acceptance of the risk is not voluntary, if the Defendants' conduct has left him [plaintiff] no reasonable alternative course of conduct." Where, as here, appellant followed the procedures contemplated by the manfacturer who offered no alternative course of conduct to accomplish the task, we conclude that appellant cannot be found to have assumed the risk. As a matter of law, insufficient evidence was presented at trial to justify the submission of this instruction to the jury, and, accordingly, we reverse.

5. Tr. Trans., 431.

Appellants also argue that the trial court instructed the jury to discount future damages to their present cash value at an overly stringent rate. We have read the instructions and find no error. The trial court instructed the jury to discount the future damages at a rate "in which an ordinary and prudent person in this area would invest his funds for such a term." [6] We do not agree that this formulation conflicts with the "unskilled investor" standard which this court is required to apply. In *Johnson v. Penrod Drilling Co.*, 510 F.2d 234, 240 (5th Cir. 1975), *cert. denied sub nom. Starnes v. Penrod Drilling Co.*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975), this court held that future earnings should be discounted to their present cash value, provided the discount rate was not computed "upon a basis that . . . call[ed] upon the beneficiaries to exercise . . . [investment] skill, for where this is necessarily employed, the interest return is in part earned by the investor rather than by the investment." In the instant case the discount rate did not require the beneficiary to exercise special financial skill, but merely "ordinary and prudent" skill, and therefore we find no error.

Appellant's fourth and final point is that the trial court committed reversible error in refusing to admit evidence of appellant's auxiliary employment benefits. We find no merit in this argument because it misstates the facts. Although evidence of auxiliary benefits is generally admissible in determining damage awards for future lost earnings, such damages are limited to "the gross earnings lost due to defendant's wrong or neglect." *Johnson*, 510 F.2d at 237. Where, as here, appellant attempted to introduce evidence of auxiliary benefits in an exhibit which included the total cost of all benefits furnished by the employer, including benefits which appellant would never have received, the trial court properly excluded the exhibit. Had plaintiff below offered to introduce only those auxiliary benefits to which plaintiff would have been entitled, we might now consider appellant's auxiliary benefits argument. Because the trial judge was never given an opportunity to rule on this issue, however, we cannot consider it.

We REVERSE and REMAND for entry of judgment for plaintiff consistent with the finding of the jury.