Frank URSICH, Appellant,

v.

Manuel D. da ROSA et al., Appellee.

No. 18409.

United States Court of Appeals
Ninth Circuit.

Feb. 26, 1964.

Rehearing Denied April 7, 1964.

Margolis & McTernan, and Ben Margolis, Los Angeles, Cal., for appellant.

Lillick, Geary, McHose, Roethke & Myers, Gordon K. Wright, and David L. Hayutin, Los Angeles, Cal., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellant was a fisherman employed aboard the appellees' vessel and was injured while so employed. He brought this action under the Jones Act (46 U.S.C. § 688) charging negligence. In a separate count he sought maintenance and cure. The Jones Act count was tried to a jury, which returned a verdict for appellees.

The evidence shows that the appellees' boat, which had returned from a fishing trip, was tied up alongside a dock in San Pedro, California, unloading its catch. The fish were frozen hard. Appellant and a fellow crew member, one Druskovich, were unloading one of the brine tanks located in the middle of the vessel. The tank had an opening 2½′ to 3′ square. It contained fish of varying weights, from 35 pounds to 150 pounds, the larger fish being on top of the smaller ones. The larger fish were taken out first by means of a rope sling attached to a winch. The sling was placed around the tail of a fish which was then lifted from the hatch and placed nearby on the deck. After the larger fish had been removed appellant entered the tank to unload the smaller fish by means of a bucket which was 2′ to 2½′ square. It was lowered into the tank, filled by appellant, and hoisted out by a winch.

At the time of the injury appellant had filled the bucket and was waiting for the winch to lift it out. His head was in the hatch opening, either at, or just above, or just below the level of the deck. Druskovich, who was on the deck, lifted a tuna that had previously been hoisted out of the tank, and weighed some 130 to 140 pounds, for the purpose of putting it in the bucket on the deck. He did this by grasping the tail with his left hand, then hooking a longshoreman's hook, which he carried in his right hand, into the eye of the fish. While the fish was being lifted, the hook came out of the eye and the fish slipped from Druskovich's grasp. It hit the deck, slid into the hatch and struck appellant on the head, shoulders and arm, knocking him down.

Appellant offered testimony of Druskovich, who actually handled the fish, and that of another experienced fisherman.

The testimony would support a finding that the fish was handled in the customary manner, but that even when handled in such manner, a fish may be dropped once or twice a day. The accident could have happened because the eye of the fish was soft so that the hook could pull out or because the bone of the fish surrounding the eye broke, or because the hook broke. There was no evidence as to which, if any, of these events occurred. There was, however, evidence that the proper way to place the hook in the eye of a tuna, in order to prevent it from slipping out, is to insert it under the bone in the eye. It was not proved, however, that Druskovich had done this with the fish that injured appellant. Sometimes with a big fish, and for safety purposes, appellees use a sling instead of the hook. Druskovich knew that it was possible that a fish could fall off the hook. He testified that he did nothing in particular to prevent this fish from doing so.

Appellant assigns four errors. The first is the refusal of his proposed instruction on *res ipsa loquitur*. The second is the giving of an instruction that the mere happening of the accident does not ordinarily permit the jury to draw an inference of negligence. The third is the giving of an instruction on contributory negligence, with the proper qualification for a proportionate reduction in damages. The fourth is the denial of interest on the award that was made under the separate count for maintenance and cure.

1. *The proposed instruction on res ipsa loquitur was properly refused.*

The instruction proposed reads as follows:

"From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendant's negligence. If the evidence tending to prove that the accident was caused by a failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

"In order to meet or balance the inference of negligence, the defendant must present evidence to show either (1) a satisfactory explanation of the accident, that is, a definite cause for the accident, in which there is no negligence on the part of the defendant, or (2) such care on the defendant's part as leads to the conclusion that the accident did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue."

This being an action based upon an act of Congress, we are bound by Federal Law, as announced by the Supreme Court.' (Cf. Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239)

In Sweeney v. Erving, 1913, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, which involved an injury to the plaintiff by X-ray burns, the trial court was asked to instruct the jury, in substance, that the occurrence of the accident was itself evidence of negligence and cast upon the defendant the burden of proving, by a preponderance of the evidence, that the injury was not caused by his negligence. The court held that this instruction was properly refused, saying:

"In the view we take of the matter, it is not necessary to pass upon the question whether the evidence presented a case for the application of

the rule *res ipsa loquitur;* for the reason that in cases where that rule does apply, it has not the effect of shifting the burden of proof." (228 U.S. p. 238, 33 S.Ct. p. 417, 57 L.Ed. 815)

\*     \*     \*     \*     \*

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." (228 U.S. p. 240, 33 S.Ct. p. 418, 57 L.Ed. 815)

This decision was cited with approval in Jesionowski v. Boston & Maine R.R., 1947, 329 U.S. 452, 457, 67 S.Ct. 401, 91 L.Ed. 416. In that case the Court described the Sweeney decision as one "which cut through the mass of verbiage built up around the doctrine of *res ipsa loquitur.*" It then quoted with approval the language that we have quoted above. The Sweeney case was also cited with approval in Johnson v. United States, 1948, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468.

■ While we have considerable doubt about it, because here direct evidence was not lacking, we assume, as the Court did in Sweeney, but do not decide, that this is a case in which the court should

have given an instruction on the doctrine of *res ipsa loquitur.* We hold, however, that the instruction proposed is subject to the same criticism as the instruction in the Sweeney case. The first paragraph of the instruction directs the jury to find in accordance with the inference "unless there is contrary evidence sufficient to meet or balance it." The second paragraph of the instruction tells the jury to weigh the inference where there is evidence to the contrary, thus implying, as the first paragraph flatly states, that the jury *must* accept the inference, rather than *may* accept it, in the absence of such contrary evidence. Yet in Sweeney the Court said that the doctrine means that "the facts of the occurrence warrant the inference of negligence, *not that they compel such an inference.*" (Emphasis added) The third paragraph of the instruction requires the defendant, in order to meet or balance the inference, to present evidence to show either a definite cause for the accident, not involving negligence, or due care, showing that the accident was not caused by negligence. Yet in Sweeney the Court pointed out that where the doctrine is applicable it means only that the facts "call for an explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense."

■ In other words, in drawing their proposed instruction, counsel for appellant fell into a common error. They asked the court to instruct upon a subject as to which we assume they were entitled to an instruction, but they framed an instruction which stated the doctrine in a manner more favorable to them than the law permits. The court was under no duty to redraw their instruction for them.[1] It properly rejected it.

---

1. Wong v. Swier, 9 Cir., 1959, 267 F.2d 749, 761; Omaha Packing Co. v. Pittsburg, F. W. & C. Ry. Co., 7 Cir., 1941, 120 F.2d 594 (a *res ipsa* instruction case); Howard v. Capitol Transit Co., 1947, 82 U.S.App.D.C. 351, 163 F.2d 910; Southern Ry. Co. v. Jones, 6 Cir., 1955, 228 F.2d 203; Cherry v. Stedman, 8 Cir., 1958, 259 F.2d 744. The rule is an old one, and we are entitled to expect

2. *It was not prejudicial error to give the "mere fact that an accident happened" instruction.*

The instruction given reads:

"The mere fact that an accident happened, considered alone, does not as a rule permit the jury to draw the inference that the accident was caused by someone's negligence."

This instruction merely states, in general terms, the ordinary rule in accident cases. It is as applicable to appellees' claim that appellant was negligent as it is to appellant's claim that appellees were negligent. It is limited by the phrase "as a rule." The court did leave to the jury, under instructions that are not criticized, the right to decide whether appellees were negligent. The criticized instruction is not inconsistent with them. It does not tell the jury that they cannot consider all of the circumstances shown by the evidence in deciding the issue of negligence *vel non*. Presumably, the jury did consider them.

■ But appellant says that this is a *res ipsa loquitur* case, that the instruction is clearly contrary to that doctrine, and that therefore it was error to give it. This is not necessarily so; as an introduction to a proper *res ipsa* instruction, the criticized instruction would have been proper and would have protected appellant against any inference, arising from the accident, that he was negligent. We find here no prejudice in giving the instruction.

3. *It was not prejudicial error to give the instruction on contributory negligence.*

The instruction is as follows:

"If you should find that the defendant was guilty of negligence which proximately caused injury to the plaintiff, and further find that the plaintiff was guilty of some negligence which proximately contributed to his injury, then the total damages awarded the plaintiff must be diminished or reduced by you in the proportion that the amount of contributory negligence chargeable to the plaintiff compares to the amount of negligence chargeable to the defendant."

■ Appellant asserts that the evidence would not support any finding that he was contributorily negligent and that therefore the giving of the instruction was error. But assuming that appellant is correct in his view that a finding of contributory negligence would not be supported, the instruction was not prejudicial here. In these cases, the rule of comparative negligence, stated in the instruction, applies. It is never a complete defense, and the court did not tell the jury that it is. Here the verdict was in favor of the appellees. This can only mean that the jury found that they were not negligent. Under these circumstances, contributory negligence, if any, becomes immaterial. It follows that the instruction could not have been prejudicial.

4. *There was no error in refusing to award interest.*

■■ Absent some peculiar facts, an award for maintenance and cure carries interest. (Medina v. Erickson, 9 Cir., 1955, 226 F.2d 475, 484) At the conclusion of the trial, counsel stipulated to the amount, at a daily rate, for certain days. Appellant's counsel then asserted that he wished to have interest awarded on a weekly basis on the amount agreed upon. Appellees' counsel objected, stating: "I object to that. I stipulated to this in the interest of speeding this matter up. I think we might very well have two contentions, one as to whether or not, despite the Public Health fit for duty, he might have gone back to fishing before March 1961 and whether or not some of this period was a result of diabetes." The court declined to award interest.

counsel to be aware of it and to frame proper instructions instead of framing improper ones that will, if accepted, lead the court into error. (Catts v. Phelan, 1844, 43 U.S. (2 How.) 376, 11 L.Ed. 306.) The Sweeney case itself in fact applies it, but without saying so.

When the stipulation was made, counsel for appellant did not mention interest; he first stated his claim immediately afterward. At that point appellees' counsel objected, as shown above. Yet appellant's counsel did not suggest that the stipulation be reopened. He wants to have his cake and eat it too. It appears that the stipulation was a compromise and we think that this constituted sufficient "peculiar facts" to justify the denial of interest under the circumstances. Appellant waived findings on this issue, and hence cannot claim that there is error because no "peculiar facts" were found. (Cf. The President Madison, 9 Cir., 1937, 91 F.2d 835, 847)

Affirmed.